THE UNITED STATES, *ex rel* JOHN MURPHY.

*vs.*

ANDREW PORTER, PROVOST MARSHAL, D. C.

AT LAW.     DECIDED OCT. 31, 1861.

*Writ of Habeas Corpus on the petition of John Murphy for the release of his son James.*

In this case President Lincoln had suspended the writ of *habeas corpus*, as a military necessity within the District of Columbia, and just prior to such suspension, Justice Merrick had issued the writ upon the petition of the father of James Murphy, who had enlisted into the military service of the United States, in the 12th Regiment of New York Volunteers, while under the age of eighteen years, for that reason asking for the discharge of said son from said military service, and made the said writ immediately returnable before him.

The Marshal of the District was directed not to execute the writ upon Provost-Marshal Porter, and to make return. That he was ordered by the President of the United States not to serve the same, as the writ of *habeas corpus* had been suspended as regards soldiers in the army of the United States, within said district, by the order of the President.

In this case appears the reasons assigned by Justice Merrick for his non-appearance in Court, upon the further consideration of the case and the protests of Judges Dunlop and Morsell against the action of the military authorities in thus interfering with the process of the Court.

Mr. D. D. FOLEY, attorney for the petitioner.

Mr. C. C. CARRINGTON for Geo. W. Philip, Deputy Marshal.

The application is as follows:

To Col. S. S. Walrath, of New York 12th Volunteers.

Your petitioner represents that his son James Murphy enlisted in your regiment of New York 12th Volunteers, at Syracuse, New York, in Captain Church's Company H, and is now in your regiment, in said company, as he is informed at Fort Onandago, where your regiment is now encamped.

And your petitioner further represents that at the time his said son enlisted it was without his knowledge or consent, and that at the time he resided with your petitioner in the

village of Manlius, Onandago County, and came to Syracuse and enlisted in said company, and when your petitioner found it out he tried to get him discharged, and tried to get him to return home.

Your petitioner further says that at the time his said son enlisted he was only of the age of about 17 years, and will not be 18 until 12th day of April, 1862, being born in 1848.

And your petitioner further represents that his said son is now anxious to return, and your petitioner is desirous of having him discharged from said Company and Regiment.

Petition for the writ of *Habeas Corpus.*

*To the Honorable Wm. M. Merrick, Judge of the Circuit Court of the D. C.:*

Your petitioner, John Murphy, father of James Murphy, respectfully represents that his son James enlisted into the service of the United States, in the State of New York, on or about the month of May, 1861, without the knowledge or consent of his said father; that the said James Murphy is under the age of 18 years, and that he is now in the custody of the Provost-Marshal in said military service contrary to law.

Your said petitioner therefore prays that your Honor award to him a writ of *habeas corpus* directed to the said Provost-marshal, or such other person in the District of Columbia as has the said James Murphy in his custody, requiring him to bring the body of the said Murphy before your Honor to inquire into the cause of his detention, and grant such relief to your said petitioner as may be lawful and just.                    D. D. FOLEY,
*Attorney for Petitioner.*

On the back of the petition was written the following: "Let the writ issue as prayed, returnable before me at the City Hall immediately.        WM. M. MERRICK, *A. J.*
October 19, 1861.

Letter of Judge Wm. M. Merrick.

On Saturday, the 19th of October, 1861, Mr. Foley, a lawyer of this city, called upon me with a petition supported by affidavit in proper form, praying for a writ of *habeas corpus*

to the Provost-Marshal, requiring him to produce before the undersigned one John (James) Murphy, who it was alleged was a minor under the age of eighteen years, and illegally detained by said Provost-Marshal as an enlisted soldier of the United States. The order was given by me to the clerk, who issued the writ in the usual form. I was informed by Mr. Foley on the afternoon of Saturday, that by reason of the many engagements of the Deputy Marshal of the D. C., he himself took the writ and served it, as by law he rightfully might do, upon the Provost-Marshal, Gen'l A. Porter; that when he delivered the writ to the Provost he was told by him that he would consult the Secretary (I think he said the Secretary of State) whether he should respect the writ or not, and that he, Mr. Foley, must consider himself under arrest, but for the present he might go at large, as upon his parol. Later in the afternoon Mr. Foley again called at my house with one or two other persons, one I think was represented as the elder brother, or some man relative of the boy Murphy, and desired to know whether he were now to consider the boy as finally discharged and at liberty to return home to his friends, inasmuch as he had been dismissed from the guard house. I declined to make any suggestion to him in the premises, and told him that whatsoever I did in the matter must be done judicially, and after facts had been spread before me upon affidavit, and the appropriate motion, if any, made thereon; and that as the Court would meet on Monday morning, the 21st, in regular term, I should adjourn all proceedings under the writ into Court for the advice and action of the whole Court. He stated that he would reduce all the facts to writing, make affidavit, and file them, for that he expected to be arrested. He then withdrew.

On Monday morning, just before the meeting of the Court, I went into the clerk's office, asked Charles McNamee, the Deputy clerk, if Mr. Foley had filed any affidavits in the case; he examined the papers and reported there was none. I then directed him to endorse upon the papers that they were by my orders adjourned into Court for its future action. After the adjournment of the Court I was informed by a member of the bar that about eleven o'clock that morning

Mr. Foley had been arrested and placed in the guard house by order of the Provost-Marshal, and he announced his purpose of applying for his release. I told him that whatever application he had to make must be in writing, upon proper affidavit, and that as the whole Court is in regular session he must make it to that Court in full sitting, and he withdrew to confer with some of his brother lawyers upon his course.

After dinner I visited my brother Judges in Georgetown, and returning home between half past seven and eight o'clock found an armed sentinel stationed at my door by order of the Provost-Marshal. I learned that this guard had been placed at my door as early as five o'clock. Armed sentries from that time continuously until now have been stationed in front of my house. Thus it appears that a military officer against whom a writ in the appointed form of law has issued, first threatened with and afterwards arrested and imprisoned the attorney who rightfully served the writ upon him. He continued, and still continues, in contempt and disregard of the mandate of the law, and has ignominiously placed an armed guard to insult and intimidate by its presence the Judge who ordered the writ to issue, and still keeps up this armed array at his door, in defiance and contempt of the justice of the land. Under the circumstances I respectfully request the Chief Judge of the Circuit Court to cause this memorandum to be read in open Court, to show the reasons for my absence from my place upon the bench, and that he will cause this paper to be entered at length on the minutes of the Court alongside the record of my absence, to show through all time the reason why I do not, this 22d of October, 1861, appear in my accustomed place.

W. M. MERRICK,
*Assistant Judge of the Circuit Court of the District of Columbia.*

The reading of the communication (from Judge Merrick) having been concluded, Judge Dunlop announced that the two remaining Judges (himself and Judge Morsell) had, after consultation, decided that the letter should be filed as requested by Judge Merrick, and it was so ordered.

They also thought it might, as the writ (of *habeas corpus*) had been regularly issued, to state that the matter was now before the Court to be tried.

The statement of their brother Judge presented a case where the progress of law is obstructed. It was the duty of the Court to afford the remedy, and, if the facts are as stated, to cause the law to be respected.

As the Provost-Marshal had obstructed a process of this Court, it would order a rule to be served on General Andrew Porter, to appear before the Court and show cause why an attachment for contempt should not issue against him.

Judge Morsell said that this was a palpable and gross obstruction to the administration of justice, to prevent a Judge of this Court from taking his seat becaue he issued a writ just such as the law requires.

The placing of a sentinel before Judge Merrick's house was evidently for the purpose of embarrassing him in this particular subject, and to prevent his appearance in Court.

He (Judge Morsell) would make the rule broader so as to have the Provost satisfy the Court as to both matters. The Court has its duty to do, a duty the Judges are sworn to do, and that duty is the administration of justice according to law.

What is the real state of things? If martial law is to be our guide, we look to the President of the United States to say so. He (Judge Morsell) did not pretend to controvert the right of the President to proclaim martial law, but let him issue his proclamation. The Judges have their duty to do under the law, and are liable to be punished if they do not do it.

I intend to do my duty, and vindicate the character of this Court as long as I sit here.

I am an old man.

The following notice was written off by the Judge: In the Circuit Court of the District of Columbia

The Clerk is directed to file the letter of Judge Merrick, addressed this day to the Chief Judge of the Court. And it is ordered this 22d day of October, 1861, that a rule to show cause be issued against General Andrew Porter, Provost-Marshal of the District of Columbia, requiring him, on or

before the 26th of October, 1861, to show cause to this Court why an attachment of contempt should not issue against him for obstructing the process and course of justice and administration of it in this Court, in the particulars set forth in Judge Merrick's letter, that a copy of said letter accompanying the rule to show cause, and that the same be returnable on Saturday, the 26th of October, at 10 A. M. of that day, at the Court-room in the City Hall, Washington. By order of the Court.

Test. JOHN A. SMITH, Clerk.

In the Circuit Court on Saturday, October 26, 1861, Judges Dunlop and Morsell being present:

The Court asked the clerk if there had been any return to the writ issued against General Porter, the Provost-Marshal of this city.

The clerk answered there was none.

Mr. Carrington, the District Attorney, presented in behalf of the Deputy-Marshal (Mr. Philips) a paper, with the affidavit of Mr. Philips, stating that the rule had not been served, because he had been ordered by the President not to serve it, and because the privilege of the writ of *habeas corpus* had been suspended for the present by the President, in regard to soldiers in the army of the United States, within the District of Columbia.

To the Honorable, the Judges of the Circuit Court of the District of Columbia.

George W. Philips, in whose hands the rule hereinafter mentioned was placed as Deputy Marshal, respectfully represents to your honors that he did not serve the rule issued by your honorable Court on the 22nd day of October, 1861, to be served on General Andrew Porter, Provost-Marshal of said District, because he was ordered by the President of the United States not to serve the same, and to report to your honorable Court that the privilege of the writ of *habeas corpus* has been suspended for the present, by order of the President of the United States, in regard to soldiers in the Army of the United States within said District, and that he respectfully disclaims all intention to disobey or treat with disrespect the orders of this honorable Court.

G. W. PHILIPS.

District of Columbia, Washington County, to wit:

On the 26th of October, 1861, personally appeared in open Court, George W. Philips (above named) and made oath in due form of law, that the matters and things stated in the foregoing and annexed answer are true.

GEORGE W. PHILIPS.

Test: John A. Smith, Clerk.

Mr. Carrington offered to submit an argument in behalf of Mr. Philips.

The Court announced that it did not propose to take any steps against Mr. Philips, but, as the return presented a grave question, the Court desired to hold it under advisement.

October 30, 1861.

Judge Dunlop, after holding the above under advisement announced the decision of the Court in the case, as follows:

The return made by Deputy Marshal the 26th of Oct., 1861, we will order to be filed, though we do not doubt our power to regard it as insufficient in law, and proceed against the officer who has made it.

The existing condition of the country makes it plain that that officer is powerless against the vast military force of the Executive, subject to his will and order as Commander-in-Chief of the Army and Navy of the United States.

Assuming the verity of the return, which has been made under oath, the case presented is without a parallel in the judicial history of the United States, and involves the free action and efficiency of the Judges of this Court.

The President, charged by the Constitution to take care that the laws be executed, has seen fit to arrest the process of this Court, and to forbid the Deputy Marshal to execute it. It does not involve merely the question of the power of the Executive in civil war to suspend the great writ of freedom, the *habeas corpns.*

When this rule was ordered to give efficiency to that writ, no notice had been given by the President to the Courts of the country of such suspension here, now first announced to us, and it will hardly be maintained that the suspension could be retrospective.

The rule on this case, therefore, whatever may be the President's power over the writ of *habeas corpus*, was lawfully ordered, as well as the writ on which it was founded.

The facts on which the rule was ordered by the Court are assumed to be true as respects the President, because the President had them before him, and has not denied them, but forbade the Deputy Marshal to serve the rule on General Andrew Porter.

The President, we think, assumes the responsibility of the acts of General Porter, set forth in the rule, and sanctions them by his orders to Deputy Marshal Philips not to serve the process on the Provost Marshal.

The issue ought *to be* and *is* with the President, and we have no physical power to enforce the lawful process of this Court on his military subordinates against the President's prohibition.

We have exhausted every practical remedy to uphold the lawful authority of this Court,

It is ordered, this 30th day of October, 1861, that this opinion of the Court be filed by the clerk, and made a part of the record, as explaining the grounds on which we now decline to order any further process in this case.

Judge Morsell submitted the following:

As a member of this Court, and on its behalf, I wish it understood that notwithstanding the blow levelled at this Court, I do distinctly assert the following principles:

1st. That the law in this county knows no superior.

2nd. That the supremacy of the civil authority over the military cannot be denied; that it has been established by the ablest jurists, and, I believe, recognized and respected by the great Father of the country during the Revolutionary War.

3rd. That this Court ought to be respected by every one as the guardian of the personal liberty of the citizen, in giving ready and effectual aid by that most valuable means, the writ of *habeas corpus*.

4th. I therefore respectfully protest against the right claimed to interrupt the proceedings in this case.